## MATTER OF DAGAMAC

### In Visa Petition Proceedings

### A-13768111

*Decided by Board March 29, 1965*

Absent a recognition of the validity of petitioner's Mexican "mail order" divorce by the State of Washington, the State of residence and domicile of petitioner, a United States citizen, it will not be recognized as valid in the Philippine Islands for the purposes of his subsequent marriage in that country to beneficiary, a native and citizen of the Philippines; hence, his subsequent marriage is invalid for immigration purposes and does not serve to confer nonquota status on beneficiary.

The case comes forward on appeal from the order of the District Director, Manila, Philippines, dated January 25, 1965, denying the visa petition on the ground that the petitioner's marriage to the beneficiary is not a valid one and she is not entitled to nonquota status as his spouse.

The petitioner, a native of the Philippines, a citizen by naturalization in the United States District Court of Washington, Washington District, on December 17, 1956, 60 years old, male, seeks nonquota status on behalf of the beneficiary, a native and citizen of the Philippines, 30 years old. The parties were married at Pasay City, Philippines on December 18, 1964. The petitioner was married once previously, the beneficiary was not previously married.

The record contains a memorandum for the file by the District Director dated January 7, 1965. The petitioner was questioned under oath and stated that he had been previously married to Basilisa Labor in Bohol, Philippines and that two children were born of this marriage; that he went to the United States in 1951 and since 1952 has been a resident of Seattle, Washington, where he owns his home; and that he was naturalized as a citizen of the United States on December 17, 1956, in Seattle, Washington. He stated he consulted an attorney in Brooklyn, New York regarding a divorce from his wife, Basilisa, and the attorney informed him that he, the attorney, would obtain a divorce in Mexico and that it would not be

necessary for the petitioner to go to Mexico. The petitioner further testified that his first wife had never been in the United States and still resides in the Philippines; on November 25, 1964, through his attorney, the petitioner obtained a divorce from his wife in the Third Civil Court, Bravos, Chihuahua, Mexico; and that his attorney told him he was now free to marry again. The petitioner stated that neither he nor his wife ever went to or resided in Mexico in connection with the Mexican divorce decree. The petitioner further stated that he returned to the Philippines in December 1964, and on December 18, 1964, married the beneficiary at Pasay City, Philippines. The visa petition indicates that the petitioner's address in the United States is Seattle, Washington, that his present address is Caloocan City, Philippines and that he and the beneficiary intend to reside in Seattle, Washington.

The record, therefore, establishes that neither the petitioner nor his first wife ever resided in Mexico and that the divorce obtained by the petitioner is of the type commonly referred to as a "mail order" divorce decree. The parties were thereafter married in the Philippines. The generally accepted rule that the validity of the marriage is governed by the law of the place of celebration is applicable in this case.[1] An examination of the marriage contract of the petitioner and the beneficiary which is contained in the file shows the nationality of the husband to be American and that of his wife Filipino. The petitioner, a native-born Philippine citizen, lost such citizenship by naturalization in a foreign country.[2] According to article 66 of the Civil Code of the Philippines, when either or both of the contracting parties are citizens or subjects of a foreign country, it shall be necessary, before a marriage license can be obtained, to provide themselves with a certificate of legal capacity to contract marriage, to be issued by their respective diplomatic or consular officials. Article 67 of the Philippine Code provides that the marriage contract in which the contracting parties shall state they take each other as husband and wife, shall also contain: (1) the full names and domiciles of the contracting parties; (2) the age of each; (3) a statement that the proper marriage license has been issued according to law. An examination of the marriage certificate and other documents fails to show a compliance with the requirements of article 66 although the marriage license itself is not an exhibit.

Article 97 of the Civil Code of the Philippines provides that a petition for legal separation may be filed: (1) for adultery on the part of the wife and for concubinage, on the part of the husband as

---

[1] *Matter of P—*, 4 I. & N. Dec. 610 (Acting Attorney General, 1952).
[2] *The Civil Code of the Philippines*, article 49 (1950 ed.).

defined in the Penal Code; or (2) for an attempt by one spouse against the life of the other. This provision, enacted in 1949, in effect, abolishes divorce in the Philippines.[3] The abolition of absolute divorce in the Philippines may result in (1) leniency toward annulment of marriage; and (2) change of nationality in order to be freed from the coercive power of Philippine law. If a divorced alien, residing or sojourning in the Philippines desires to marry there, the requirement imposed by the Philippine law before a license is issued is for him to show that he has the capacity to marry under his national law. If under his national law, the divorce obtained by him is valid, no reason exists why he should be precluded from marrying in the Philippines. This liberal attitude commends itself as socially desirable from the international standpoint. The rule provides a basis for sound international cooperation in the matter of filing decrees.[4]

The petitioner has resided in the State of Washington since 1952, was naturalized in Seattle, Washington on December 17, 1956, and continues to be a United States national and a resident and domiciliary of the State of Washington. Section 26.08.200 of the Revised Code of Washington relating to Out-of-State Divorces—Validity—provides that a divorce obtained in another jurisdiction shall be of no force or effect in this state if both parties to the marriage were domiciled in this state at the time the proceeding for divorce was commenced. Research fails to disclose a case exactly in point in the State of Washington. A "mail order" decree of divorce of a country outside the United States, i.e., a decree obtained by mail by a spouse not domiciled in the foreign country in proceedings in which neither the husband nor wife appeared before the foreign tribunal and the defendant spouse was not served with process in the divorce forum, is invalid and will not be recognized.[5] A state or country cannot exercise through its courts jurisdiction to dissolve a marriage when neither spouse is domiciled within the state.[6] A decree of divorce granted by a court of any country which is not the *bona fide* and true domicile is valueless, unless indeed its effectiveness is recognized by the *lex domicilii.*[7]

Summarizing, under the present Philippine Civil Code divorce in the Philippines among Filipinos is abolished. A divorced alien (a person of other than Philippine nationality) must show that he has

[3] Garcia & Alba, *Civil Code of the Philippines* (1950), p. 253.
[4] Salonga, *Private International Law* (1952 revised ed.), pp. 272-275.
[5] 27B. *C.J.S.,* s. 352.
[6] *Restatement of the Law of Conflict of Laws,* s. 111.
[7] Padilla, *Conflict of Laws* (1958), p. 169.

the capacity to marry under his national law.[8] It appears that a Mexican "mail order" divorce decree is not valid in Washington, the State of residence and domicile of the petitioner, who is a naturalized American citizen, and therefore an alien under Philippine law. Accordingly, the appeal from the decision of the District Director denying the visa petition will be dismissed.

In the event the petitioner can present a certificate of legal capacity to contract marriage in the Philippines issued by a United States consular officer, such certificate may be submitted together with a motion to reopen the proceedings.

**ORDER:** it is ordered that the appeal be and the same is hereby dismissed.

---

[8] *Supra,[4].* This view is in accord with the view of the Attorney General in *Matter of P—,* 4 I. & N. Dec. 610.